## PICKETT'S HEIRS v. FOSTER et al.

*(Circuit Court, W. D. Louisiana.  February, 1888.)*

1. MORTGAGES—DEEDS OF TRUST—EXECUTED OUT OF STATE.
     A deed of trust, executed in another state, on property in Louisiana, to secure the payment of promissory notes, will be enforced as a conventional mortgage.

2. SAME—LIEN—TACIT MORTGAGE—GUARDIAN AND WARD.
     Several years after the minors R. & B. were emancipated by marriage, and while they were in the enjoyment and control of their estates, their former tutor filed and caused to be homologated his final account against them.  In the judgment the clerk recognized a tacit mortgage in favor of the tutor on his wards' property, dating from the beginning of the tutorship, which was never registered.  *Held* that, whatever may be the legal effect of such a mortgage as between the tutor and his former wards, his tacit mortgage is inferior to the mortgage which they had contracted after their marriage, and while in full control of their property, with complainants.

3. SAME—LIEN—RECORDING.
     The deed of trust in this case was originally registered in 1866.  Not being reinscribed within 10 years thereafter, it was, as to third persons, extinguished, when, in 1885, it was again registered.  This case discloses no facts which should forbid the application of the registry laws of Louisiana.

4. EXECUTORS AND ADMINISTRATORS—PUBLIC ADMINISTRATOR—ACTIONS—DISMISSAL BY SUCCESSOR.
     The public administrator, to whom no letters of administration are shown to have been granted by the court, instituted a suit in the interest of a succession.  Afterwards he resigned, and one of the defendants in the suit, having been appointed his successor, caused the suit to be called out and dismissed for want of prosecution.  *Held,* that the suit was instituted without authority by the public administrator, and his successor in office was not charged with any official duties in relation to it; that his having the suit called out and dismissed, or his failure to prosecute it, does not make him in any capacity liable to the heirs of the succession.

*(Syllabus by the Court.)*

In Equity

*J. T. Ludeling* and *W. G. Wyly*, for complainants.

*C. I. & I. S. Boatner* and *A. H. Leonard*, for defendants.

BOARMAN, J.   Complainants sue to enforce the lien of a deed of trust executed at Memphis, Tenn., to J. C. Pickett, on the Jonathan Morgan plantation in Carroll parish, to secure the payment of three promissory notes, amounting to $18,000, with 6 per cent. interest, drawn by Mrs. Agnes Ricketts, and Bell; to have certain acts, sales, transactions, and mortgages, which were made from time to time by the defendants *inter sese*, declared without effect as to the plaintiffs; and for judgment *in personam*, against George Foster, formerly the public administrator of said parish, because of his failure to discharge certain official trusts imposed on him by law, as the public administrator of Carroll parish, for such a sum as will repair the damages caused by his unfaithfulness.   The bill shows that the last of the notes became due January, 1869, and that the deed of trust executed to secure their payment was registered in Carroll parish January, 1866, and reinscribed in 1885; that J. C. Pickett died in Kentucky, and B. H. Lanier, as the public admin-

istrator of Carroll parish, brought suit December 23, 1873, in that parish, to foreclose said deed of trust on behalf of Pickett's succession; that in said suit Agnes Ricketts, Narcessa Bell, Ezra Wheeler, Thomas Roundy, and Augustus Ireland,—the latter three composing the firm of Ezra Wheeler & Co., of New York, and claiming to be part owners of said plantation,—and George Foster, then in possession, and claiming to be part owner of said plantation, were made defendants; that all said defendants pleaded to the said suit, styled, "B. H. Lanier, Public Administrator, *vs.* Ezra Wheeler *et als.*," June 2, 1874; that before any other proceedings were had therein, Lanier resigned his office, and George Foster, one of the defendants in that suit, was appointed and qualified as public administrator in his place, and he gave bond, May 6, 1875, according to law, in the sum of $10,000; that said suit, after Lanier's resignation, came under the official administration of George Foster, and he was charged with the prosecution of it in the interest of all concerned. The complainants allege bad faith and fraud against George Foster, because, as they charge, he sought the appointment and place of public administrator for the purpose of causing the wrongful dismissal of said suit, and of otherwise obstructing the enforcement of their rights against the property which the said Foster then claimed to own; that he caused his own attorneys to demand that said suit be called and dismissed for want of prosecution; and that, when the plaintiffs were called, he answered that he knew nothing concerning the succession of James C. Pickett; that on December 4, A. D. 1875, his attorney wrote up, and the judge signed, judgment dismissing said suit for want of prosecution; that in order to despoil the estate of which he was the administrator, he, having had the suit wrongfully dismissed, fraudulently withheld all information from complainants with regard to the enforcement of their rights against said plantation. They allege that George Foster, public administrator, having control of the notes and deed of trust, was charged in fact and in law with trusts and duties that made him the trustee of complainants, the holders and owners of the notes and mortgage; that he wrongfully neglected to have the deed of trust reinscribed, so as to preserve their claims from being barred by prescription. They allege that notwithstanding said Foster occupied, possessed, and claimed to be the owner of said plantation since February 5, 1875, he has, from time to time, by fraudulent tax sales and other fraudulent schemes and devices, charged and fully set out in this bill, interposed, or caused to be interposed, certain named persons as the purchasers and owners, or as the mortgagees of a part or all of said plantation, "in order to screen and shelter" the same from the legal effect of said deed of trust, and to deprive complainants of their rights therein; that after the time had come when, in his opinion, the said plantation could no longer be subjected to complainants' mortgage, because the deed of trust was prescribed, he caused the several persons so interposed by him to reconvey the whole plantation to himself, and that he caused his wife to institute a collusive and fraudulent suit against himself for a separation of property, and for $2,986, the amount she claimed that he owed her; that she

obtained judgment accordingly, and July 5, 1884, caused the plantation to be sold at sheriff's sale to satisfy her judgment, and she became the purchaser thereof for $10,306, the amount of certain mortgages then out-standing against it, and paid in cash only the costs of her suit. The drawers of the notes acknowledge their indebtedness on the same. George Foster and his wife, answering, allege that the plantation was acquired by them in good faith, and for valuable consideration. They deny the claims of complainants, and Mrs. Foster pleads the prescription of five and ten years.

Such of the evidence as appears to be essential to the determination of this suit is substantially as follows: F. M. Goodrich, in 1855, be-came the tutor of the drawers of the notes when they were the minors Agnes and Narcessa Morgan. In 1859 he filed a provisional account, which showed himself, as tutor, to be indebted to the minors $1,263.31. In 1862 the two minors were emancipated by marriage, and took pos-session of their property. The matter of the tutorship not being settled when the minors were married, the tutorship remained in *statu quo* until January 25, 1867, when Goodrich filed two petitions in the district court of Carroll parish,—one against Agnes Ricketts, the other against Narcessa Beel. In these petitions he alleges that since April 20, 1859, when he filed his provisional account, up to the 15th March, 1862, the minors had become indebted to him as tutor $———; "that prior to the said 15th March, 1862, said minors became emancipated, and had taken possession of their property rights and credits, real and personal; * * * that he presents accounts and vouchers showing the indebtedness alleged by him, about $4,000 in the aggregate; * * * and prays, after due and legal notice, that said account be homologated, and a judgment ren-dered in favor of your petitioner decreeing the balance due in favor of your petitioner $———, with legal interest from the 15th of March, 1862; and that he be discharged." The petitions were filed January 25, 1867. Several days before that date Mrs. Ricketts and Mrs. Bell made the following confession of judgment:

"I hereby waive service of the foregoing petition, copies of accounts, vouch-ers, citations, etc., and, having examined the before-mentioned accounts, and found them to be correct, acknowledge my indebtedness to petitioner as set forth, viz., $3,498.71; and do further acknowledge this to be a full, complete, and final settlement for all liability of petitioner, as tutor aforesaid, and con-cur fully in the prayer of his petition. Done this 11th January, 1867."

On the next day after the petition was filed, January 26th, the clerk signed the following judgment:

"By reason of the law and the evidence and within written release and acknowledgment of indebtedness, all hereto annexed, it is therefore ordered, adjudged, and decreed that the annexed final account and settlement of F. M. Goodrich, tutor of Agnes A. Morgan, now Ricketts, be, and the same is hereby, approved and homologated, and said tutor finally and fully discharged from said trust, and his bond as tutor canceled. It is further ordered, adjudged, and decreed that F. M. Goodrich have and recover of said Agnes Ricketts the sum of thirty-four hundred and ninety 71-100 dollars, with legal interest thereon from 15th March, 1862, the amount acknowledged to be due by her,

and that the legal tacit mortgage in favor of said tutor be recognized to date from December 3, 1855. Done and signed at Floyd, Carroll parish, Louisiana, January 26, 1867."

Similar proceedings were had for $907 against Narcessa Bell, who, about this time, had married J. H. Green. Goodrich, in execution of his judgments, caused the plantation to be sold at sheriff's sale, September 5, 1868. J. H. Green bid in his wife's part of the plantation, and Goodrich bid in the other part, belonging to Mrs. Ricketts. On December 18, 1868, Goodrich caused the deputy recorder of Carroll parish to erase from the mortgage books the said deed of trust, and on same day sold the interest purchased by him to Mrs. Ricketts for $4,000, payable in four installments, without warranty of title. Green carried on the planting interest for himself and wife. Mrs. Ricketts, shortly after making the purchase from Goodrich, married R. M. Scanlan, and reserved to herself the management of the planting interests. Both Green and Mrs. Ricketts became indebted to Foster & Gwyn, commission merchants in New Orleans. In February, 1868, Mrs. Ricketts, at private sale, sold her part of the plantation for $36,934, to George Foster, a large part of the price going to pay her indebtedness to the said firm. In August, 1873, Green's part was sold by the United States marshal under execution issued in the suit of Ezra Wheeler & Co. *v.* I. H. Green, and was bid in by the plaintiffs therein for $10,074. The marshal retained "$422 for taxes," and the purchasers the balance of the sum. November 28, 1874, Foster's interest, for which he had paid Mrs. Ricketts $36,000, was sold at a tax sale, for $318 due by himself, to Gwyn for $1,500, and the purchaser obtained from the state auditor a title ratifying the tax sale, July, 1875. The other interest, which had been purchased at the marshal's sale, in August, 1873, by Ezra Wheeler & Co., was sold at a tax sale for taxes, due by Green for 1873, to Gwyn for $1,001. December 16, 1881, Gwyn, having become the purchaser of the whole plantation at said tax sales, sold it to George Foster for $5,000. Mrs. Foster filed her suit against her husband, December 5, 1881, obtained judgment for separation of property, and for $2,986, July 2, 1882; and the sheriff sold said plantation under her judgment. She bid in the plantation for $10,306, the amount of certain mortgages, not including complainant's deed of trust, then on registry against it. She retained the purchase price, except the costs, which she paid; and the sheriff returned the writ, "unsatisfied," 8th July, 1884. In September, 1873, after the whole property had passed out of the hands of Mrs. Ricketts and Bell, Scanlan and Green to whom these ladies were then married, made a contract with James C. Pickett, administrator of Pickett's estate at Frankfort, to represent him as his agent to enforce the said deed of trust, and collect the notes. In this agreement they were allowed 75 per cent. of what they could recover, provided they paid costs. They brought the notes to Louisiana, and gave them to I. W. Montgomery, a lawyer, whom they employed under a written contract to sue for their recovery. Montgomery proceeded to sue in the name of the public administrator, Lanier. It does not appear that Lanier had received any letters of ad-

ministration in the succession of Pickett. The notes remained in the hands of Montgomery, and were not filed in the suit, and he did not advise them, nor did they inquire of him concerning the suit or the notes, for nearly 10 years. No inventory or appraisement was made in the succession of Pickett.

The pleadings, issues, and arguments, oral and written, of counsel on either side, suggest several questions, among which it seems necessary to consider only the three following questions: (1) Is a deed of trust, executed in another state, on property in Louisiana, to secure the payment of promissory notes, under the jurisprudence of Louisiana, entitled to the legal effect of a conventional mortgage? (2) Will the judgment signed by the clerk of the court in favor of Goodrich, tutor, against Mrs. Ricketts and Mrs. Bell, under which said plantation was sold, protect the purchasers or their assignees against complainant's mortgage? (3) Can a suit brought in the interest of a succession by a public administrator, under the laws of Louisiana, to whom no special letters of administration are shown to have been granted, be considered in law a pending suit, or have, under the facts in this case, any legal effect against Foster and other defendants in this suit?

1. The authorities abundantly warrant an affirmative answer to the first question. *Watson* v. *James*, 15 La. Ann. 386; *Frelson* v. *Tiner*, 6 La. Ann. 18; *Tillman* v. *Drake*, 4 La. Ann. 16.

2. The authority of a clerk to homologate a tutor's account, under the laws of Louisiana, depended on certain jurisdictional facts. Such accounts had to be filed, and the fact of filing had to be advertised for 30 days, and, if unopposed, they could be legally homologated by the clerk on the first Saturday of each month. Act No. 56, Sess. 1855. In this case, the clerk filed Goodrich's account on one day, and on the next signed the judgment herein recited. None of the requirements, which the history of this case shows to be so essential for the protection of the rights of third persons, seems to have been observed by the clerk. Whatever may have been the extent of his authority, under the facts in this case, to homologate Goodrich's unopposed account, it certainly never was intended by the legislature to invest a clerk of the probate court, or any judge thereof, when homologating a tutor's account, with judicial power to impose a legal or tacit mortgage on the property of a person in favor of a former tutor, when, in the tutor's petition asking for the homologation, it is shown that the minor has long since been emancipated by marriage, and has had for years before full control of all her estate, so as to affect property which, at the date of the tutor's judgment, had been mortgaged in pursuance of legal contracts made with other persons by the emancipated minors. In the absence of any proof, without the consent of the minors, and when as a matter of fact no such mortgage is sought or prayed for by the suing tutor, a judgment fixing a legal mortgage to date and take rank from the beginning of the tutorship, and one, too, that has never been registered, could not affect complainant's deed of trust or mortgage, which is shown to have been on record when Goodrich's judgment was signed. Whatever may be the effect of such a judgment as between

the several parties thereto,—that is, between the minors who were then emancipated and their former tutor,—or however much their subsequent acts, sales to, and transactions with George Foster and other defendants may forbid them, in good conscience or in law, to question his or their title or interest in said plantation, it will not be seriously contended that that part of the clerk's judgment giving such a mortgage to Goodrich can affect persons having such rights as complainants. The erasure by the parish recorder of the deed of trust now sued on was wholly without effect against any one. It is true that Lanier was the public administrator at the time he instituted the suit in the interest of Pickett's succession; that, when he resigned his office, George Foster became his successor in office, and was charged in law with the administration and prosecution of all suits legally instituted by his predecessor; and that he, as one of the defendants in that suit, knew that such a suit was on the court docket, and that the purpose of Lanier in bringing said suit was to have the plantation claimed by him (Foster) subjected to the payment of the notes now sued on; but whatever may have been his purpose in causing the dismissal of the said suit, or his conduct or gain in the various transactions which he and others had in relation to said plantation, there is nothing in this suit to show that he, as an individual, or as the public administrator, was at any time charged in law or in equity with trusts, in the interest of complainants, of a fiduciary kind. James C. Pickett, to whom the deed of trust was executed, lived and died in Kentucky. It is not shown that he had any property in Louisiana at the time of his death.

Defendants' counsel contends that if Pickett left a succession of any kind in Louisiana it was not such a succession as could come under the administration of the public administrator. It is not necessary to consider that point, because it seems to be clearly established by the courts in Louisiana that a public administrator, like any other person desiring to administer a succession, must, before he can do anything in or with the succession, in some way be authorized by an order of the proper court. The evidence does not show that he had such authorization, and we are not warranted in presuming that he had legal authority to institute said suit. Such authority must be affirmatively shown before he could legally act. The failure to show affirmatively that Lanier, as public administrator, was properly authorized to bring suit for Pickett's succession, is fatal to complainants' action against Foster *in personam.*

The deed of trust relied on by complainants was registered originally in January, 1866. Not being reinscribed within 10 years thereafter, it had, when it was reinscribed, in 1885, become extinguished as to George Foster or his assignees. The complainants are not shown to be or to have been the *cestui que trust* of Foster, and the evidence shows no good reason for not applying the law of registry in Louisiana in favor of himself and his assignees. Judgment for defendants.